## APPEAL OF AMERICAN VALVE CO.

Docket No. 4696.   Decided September 30, 1926.

1. Late in December, 1917, due to increased production and the discontinuance of water transportation facilities theretofore used, it became necessary for petitioner to acquire a new site and to construct new and more modern buildings in which to carry on its operations.   In June, 1920, it began operations in its new plant and permanently abandoned the use of the old site and buildings. *Held,* that petitioner was entitled to deduct for obsolescence the unextinguished cost of its buildings on December 31, 1917, ratably over the years 1918 and 1919 and the first six months of 1920.

2. For the purpose of determining the depreciated value of buildings on December 31, 1917, *held,* upon the evidence, that 2 per cent per annum was a reasonable allowance for the exhaustion, wear and tear thereof for 1917 and prior years.

*F. Morse Hubbard, Esq.,* for the petitioner.
*R. P. Smith, Esq.,* for the Commissioner.

The Commissioner determined deficiencies of $10,673.75, $863.09 and $1,291.61 for the years 1918, 1919 and 1920, respectively.   The issues are, first, the period over which the petitioner was entitled to deductions for obsolescence of its plant facilities, and, second, the rate at which the cost of such facilities should be exhausted over the period from the date acquired to the beginning of the obsolescence period for the purpose of determining their unextinguished value at that time.

### FINDINGS OF FACT.

Petitioner is a New York corporation engaged in the manufacture of brass and iron valves at Coxsackie.   From the time of its organization in 1901 to June, 1920, its plant was located on the banks of the Hudson River.   The land, which was acquired in 1901, together with the subsequent improvements thereto, cost $9,999.18. The buildings erected on this location consisted of a two-story main factory building and other buildings, as follows: iron foundry, brass foundry, power plant, office, pattern shop, and grinding and core shop.   All of these buildings with the exception of the core shop were of brick construction, with slate roofing and concrete foundations resting on bed rock.   The core shop was a frame building erected in 1917 at a cost of $2,804.15.   The other buildings mentioned were erected from time to time from 1901 to 1919, the principal additions subsequent to the construction of the original building in 1901 having been made in 1906 and 1908.   The total cost of all the buildings and additions to December 31, 1917, was $53,-

058.89. The cost of a wharf constructed in 1911 was $3,237.50. The total cost of land, buildings, and wharf to December 31, 1917, was $66,295.57. At the time petitioner erected its plant in 1901, and for several years thereafter, there was regular freight service by boat from Coxsackie, by which petitioner was able to transport its product to its distributing agent in New York City. Subsequently boat service became irregular and infrequent, and at the same time the company's volume of business increased to such an extent that in 1917 the practice of shipping its product to a sales agent in New York City for distribution had to be discontinued and shipments instead had to be made direct to dealers by rail. As a result, the location of the plant, which was a considerable distance from the railroad, became economically undesirable. Furthermore, the output in 1917 had increased to such proportions that the buildings in use no longer afforded sufficient space for the manufacture and handling of the product of the company. The main factory building, which was an old style two-story structure, had by 1917 become unsuitable for the company's use, inasmuch as the increased production of relatively heavy articles demanded a one-story structure of more modern type, that would allow the entire product to be handled on the ground floor, avoiding thereby the necessity of hoisting it to the second floor for a portion of the manufacturing processes. By reason of these circumstances, the petitioner determined near the end of 1917 that the old plant had outlived its usefulness and that it would be necessary to abandon it for a new location, with new buildings near the railroad. Up to this time petitioner had been transporting its product to the railroad by trucks.

When the petitioner definitely determined in the latter part of 1917 to abandon its old site and plant, it entered into negotiations for the purchase of two certain adjoining parcels of land contiguous to the tracts of the West Shore Railroad. The owner of one of these parcels expressed a willingness to sell. The other tract had been conveyed to a producer of moulding sand subject to an option to repurchase as soon as the sand had been removed. The person who had so conveyed it and who held the option to repurchase expressed his willingness to sell the property to the petitioner as soon as he could reacquire it. Upon investigation, the petitioner concluded that this property could in all probability be acquired during 1918. Thereupon, it began negotiations in January, 1918, with a construction company, resulting in the submission of plans and estimates for the factory. These negotiations were continued for several months. In the meantime, about September, 1918, before the owner of the option above referred to was at liberty to exercise the same,

the owner of another tract of land, consisting of about 30 acres adjoining the railroad, died, and this land was placed upon the market. Inasmuch as it in many respects afforded a more desirable location than the property for which the petitioner had been negotiating, the petitioner began negotiations which resulted in the purchase of the 30 acres on April 1, 1919. The acquisition of this property necessitated a revision of the plans for the new plant and, after receiving bids, the contract for the erection of the new plant was let on July 18, 1919. The construction was completed in December, 1919, and the petitioner immediately began moving from the old to the new plant with as little interruption in operations as possible. The process of moving was completed in June, 1920, whereupon the old plant was entirely abandoned and was not thereafter used for any purpose.

The buildings at the old plant were, except for ordinary wear and tear, in reasonably good condition. However, in 1917, the petitioner entertained no hope of finding a purchaser and concluded that it would be necessary to salvage the buildings. It estimated that the salvage value of the buildings and the value of the land would approximate $20,000. Before the petitioner had undertaken to salvage the buildings, the Coxsackie Board of Trade succeeded in finding a purchaser and the land and buildings were sold in December, 1920, for $20,000.

For the purpose of obsolescence deductions, which were allowed for only 1919 and 1920, the Commissioner determined that the exhaustion sustained upon the buildings to December 31, 1918, amounted to $20,482.80, and that of the wharf to $906.50, computed at the rate of 4 per cent per annum upon cost. The basis used is not in controversy. The exhaustion determined, plus the proceeds of the sale, amounted to $41,389.30. The Commissioner deducted this amount from the cost of all the property to December 31, 1918, of $67,880.30, resulting in an obsolescence allowance of $26,491, which he spread over the years 1919 and 1920, allowing in each year an obsolescence deduction of $13,245.50.

Two per cent per annum was a reasonable allowance for the exhaustion, wear and tear of the buildings and 4 per cent for the wharf for 1917 and prior years. Petitioner made no entry upon its books on account of exhaustion, wear and tear of property prior to 1917.

OPINION.

LITTLETON: In December, 1917, petitioner definitely determined that its plant, in which its operations were then being carried on, had served its usefulness and would have to be abandoned within approximately two years. In addition, it determined that the sal-

vage value of the entire properties was approximatly $20,000. The use of the properties was abandoned in June, 1920, and later, through the efforts of the local board of trade, they were sold for $20,000. The petitioner therefore was entitled to an obsolescence deduction over the period from January 1, 1918, to June 30, 1920, of the December 31, 1917, depreciated cost of its buildings and wharf.

> *Judgment for the petitioner. Order of re-determination will be entered on 15 days' notice, under Rule 50.*